```
UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
NICHOLAS G. CHRISTAKIS,                         :
                                                :
                            Plaintiff,          :         MEMORANDUM
                                                :         AND ORDER
            - against -                         :
                                                :         05 CV 1953 (JG)
GLOBAL CONSULTANTS DIRECT, INC.,                :
FRANCHISE CAPITAL COMPANY, PAUL                 :
BADAMO, and JOHN LANCIOTTI,                     :
                                                :
                            Defendants.         :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    BENNETT, GIULIANO, McDONNELL & PERRONE, LLP
        225 West 34th Street, Suite 402
        New York, NY 10122
    By:    William R. Bennett
        Attorneys for Plaintiff

    WACHTEL & MASYR, LLP
        110 East 59th Street
        New York, NY 10022
    By:    Steven J. Cohen
        Attorneys for Defendants Franchise Capital Company, Paul Badamo, and John
        Lanciotti

JOHN GLEESON, United States District Judge:

        Nicholas G. Christakis brings this diversity action to recoup money he claims he lost in connection with a mortgage brokerage branch office of defendant Global Consultants Direct, Inc. ("Global") in 2002. Christakis operated that office under an arrangement with Global until January 30, 2003, when he agreed to convey the brokerage business to defendants Franchise Capital Company, Paul Badamo, and John Lanciotti (collectively, "Franchise"), while retaining an interest for himself. The agreement fell apart less than a month later. In 2005, Christakis sued Global and Franchise for breach of contract, tortious interference with contract,

and unfair trade practices.[1]  Franchise moved for summary judgment, and I heard oral argument on July 11, 2007.  For the reasons set forth below, the motion is granted.

## BACKGROUND[2]

In May 2002, Christakis entered into an agreement with Global, a licensed mortgage broker, to manage and operate a mortgage brokerage business in Billerica, Massachusetts under the name "Speededollars."  Christakis became disenchanted with the arrangement quickly, and in June 2002 he contacted Lanciotti, a former co-worker who was operating a mortgage brokerage branch office for BLS Funding Corp., another licensed mortgage broker.  Christakis told Lanciotti he was unhappy with Global.  Lanciotti and Badamo, who did business under the Franchise Capital Company moniker, visited the Billerica branch to explore the possibility of a business agreement with Christakis.

After some negotiations, Franchise and Christakis came to an agreement whereby Franchise would take over Christakis's interest in the Billerica branch.  Christakis terminated his agreement with Global in November or December 2002, claiming that Global had not paid certain commissions.  Then, on December 30, 2002, Franchise and Christakis signed a "Joint Venture Asset Leasing Agreement" ("JVALA").  The agreement provided that Christakis would "provide and lease" the Billerica mortgage brokerage business to Franchise, which would "operate, utilize and lease" the business.  JVALA ¶ A.  In particular, the agreement provided:

> [Christakis] has agreed to provide and lease and [Franchise] has agreed to operate, utilize and lease on a best faith efforts basis all of the assets of

---

[1] The unfair trade practices claim was withdrawn at the pre-motion conference.  Christakis has not opposed the motion for summary judgment dismissing his tortious interference claim, and his counsel confirmed at oral argument that only the breach of contract claim remains at issue.

[2] Unless otherwise noted, the facts set forth are not in dispute.

2

> [Christakis] free and clear of all pre-existing liabilities arising from the current operation of [Christakis]'s business . . . .

*Id.* Pursuant to the agreement, Franchise would pay Christakis "a 7% equity interest in the gross fees generated" by the operation of the business (with some immaterial modifications). *Id.* ¶ 3. Christakis agreed "not to be involved in the day to day operation of the Company" and "not [to] interfere with said Company nor visit or maintain offices at said premises." *Id.* ¶ 1.1. For its part, Franchise would "have the right to receive all fees and commissions" generated by the operation. *Id.* ¶ D. Franchise also agreed to, among other things, assume certain operating liabilities, including "[l]eases, phone lines, gas, electric, water, federal express or any courier service." *Id.* ¶ B.

On January 1, 2003, Franchise entered into a real estate lease agreement with JCNP Realty Trust, paid certain pre-existing liabilities and other business expenditures, and met with staff at the Billerica branch. Soon, though, Franchise became unable to operate the business because it could not obtain telephone, utility, credit and office-supply services on account of outstanding pre-existing liabilities to those service providers. *See* Franchise's Rule 56.1 Statement ¶ 11 (citing Badamo Decl. ¶ 11). Christakis claims "[t]here is no evidence to support the self-serving allegations that services were being denied," Christakis's Rule 56.1 Response ¶ 11, but cites no evidence to the contrary.

On February 12, 2003, Badamo wrote to Christakis demanding payment of the outstanding liabilities. The next day, Badamo wrote to Christakis's counsel with the same request. Neither Christakis nor his counsel responded, and Badamo and Lanciotti wrote Christakis on February 19, 2003 that they considered the agreement null and void.

A declaration by Badamo states that Franchise did not receive any income for

3

business generated by the Billerica branch. *See* Badamo Decl. ¶ 16. Christakis claims, to the contrary but without citation, that "[t]here were loans waiting to [be] processed between January 1, 2002 and March 1, 2002 that were generated at the Biller[i]ca Branch." Christakis's Rule 56.1 Response ¶ 16.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Critically,

> the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no

4

rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo*, 22 F.3d at 1223-24 (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

DISCUSSION

Franchise moves for summary judgment on the breach of contract claim. To demonstrate breach of contract under New York and Massachusetts law,[3] a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). Franchise argues that it performed its obligations under the JVALA as a matter of law, and, even were that not the case, any nonperformance was excused by Christakis's own inadequate performance.

Christakis has sufficiently established nonperformance of the agreement by Franchise. No one disputes that Franchise terminated the contract a month after it was executed, after having promised to operate and lease the business. Though the contract does not provide for a termination date, the parties surely contemplated that the business would operate long enough to turn a reasonable profit -- after all, a key benefit to both parties was the fees generated

---

[3] The JVALA chooses Massachusetts law as the governing law of the agreement, but the parties agree that New York law does not conflict with Massachusetts law regarding the elements of a breach of contract claim. *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment 5-7 (citing only New York law to support breach claim); Memorandum of Law in Support of Moving Defendants' Motion for Summary Judgment 7 n.1 ("The elements of a breach of contract claim in Massachusetts are essentially the same as in New York.").

by the business.  *See Lubin & Meyer, P.C. v. Lubin*, 427 Mass. 304, 309-10 (1998) (affirming trial court's inference of reasonable time for performance "in the absence of a designated time for performance specified in the agreement").  As mentioned, Franchise argues that the nonperformance of its promise to operate the business was excusable because Christakis failed to pay certain pre-existing liabilities, but that argument goes to the *justification* for Franchise's nonperformance.

Turning to that issue, the only rational conclusion a jury could draw is that Christakis failed to perform a material obligation -- to "provide" to Franchise the Billerica office "free and clear of all pre-existing liabilities arising from [Christakis's] operation of" the business.  That failure in turn excused Franchise's nonperformance.

Before parsing the agreement, a few general words about it are appropriate.  Counsel informed the Court at oral argument that the agreement was not drafted by attorneys, and that is obvious.  Though the title of the document includes the phrase "Joint Venture" and the term "Leasing Agreement," the arrangement it created was neither: there is no dispute that the purpose and effect of the agreement was simply to transfer Christakis's interest in the Billerica branch to Franchise in exchange for 7% of the gross receipts generated by that office.[4]  The document employs creative terminology (Christakis, the seller of the business, is termed the "Lessee" in the agreement, and Franchise Capital Company is denominated the "Lessor.").  And

---

[4] As Christakis described it at his deposition, Franchise acquired the existing "infrastructure" of the office -- the office equipment and the employment relationships with the personnel. Christakis Dep. 114-19.  The physical premises in which the office was located were the subject of the separate agreement referenced above, *i.e.*, a lease between the individual defendants and an entity known as JCNP Realty Trust.  *See* Cohen Decl. Ex. D.

it seems clear that the drafter of the document[5] began with a template that is normally used to establish a contract of employment. As a result, previously undefined terms -- "the Executive" and "the Company" -- pop up unannounced in various of the agreements' provisions. *See, e.g.*, JVALA ¶¶ 5.4, 5.5, 6.1, 12, 15.2. Finally, the obligation at issue here -- Christakis's duty to turn over the Billerica office free and clear of all pre-existing liabilities -- is set forth among the "Recitals" at the outset of the agreement, *before* the clause that reads "THEREFORE, the Parties agree as follows:".

The latter oddity is of no moment. Christakis has not argued based on the text of the agreement that the disputed obligation is anything less than a formal contractual obligation, and his deposition testimony would defeat any such argument. *See, e.g.*, Christakis Dep. 118-29. Rather, he argues that (a) Franchise was not actually denied services as a result of the failure to pay the operational expenses; (b) it was Global's obligation to pay the expenses; and (c) in any event, the expenses did not have to be paid right away. As discussed below, these arguments have no merit.

The JVALA provides that

[Christakis] has agreed to provide and lease and [Franchise] has agreed to operate, utilize and lease on a best faith efforts basis all of the assets of [Christakis] free and clear of all pre-existing liabilities arising from the current operation of [Christakis]'s business . . . .

JVALA ¶ A. Christakis does not establish a genuine dispute as to the fact that certain pre-existing liabilities carried over into Franchise's operation of the Billerica branch. He makes the unsubstantiated assertion that services were not actually denied Franchise as a result of

---

[5] According to Christakis's testimony, he drafted the agreement himself, without any assistance. *See* Christakis Dep. 111-12.

Christakis's failure to pay those liabilities. *See* Christakis's Rule 56.1 Response ¶ 11. But my review of the record turns up no evidence in support of this claim. Accordingly, I conclude as a matter of law that at least some pre-existing liabilities went unpaid, and therefore there was breach of the obligation to provide the business to Franchise "free and clear of all pre-existing liabilities."

As mentioned above, Christakis argues that this was Global's breach, not his. He appeals to industry custom and practice for the proposition that Global was responsible for paying the outstanding operating expenses at the time the agreement was signed. And he asserts that he did everything he could to get Global to pay those bills before Franchise took over the Billerica office. *See* Christakis Dep. 122 (describing repeated entreaties to Global to "[p]ay my bills. Cut the shit and pay my bills."). This argument cannot save Christakis, however, because even if he is right about Global's responsibility for those liabilities as a matter of custom, Christakis agreed with Franchise that he would pay them. Indeed, as far as the JVALA is concerned, he was *solely* responsible for doing so. Christakis, not Global, is the signatory to the JVALA, and therefore Christakis, not Global, promised to provide the business to Franchise "free and clear" of the liabilities in question. Having breached that responsibility, Christakis was in breach of the contract.

Finally, at oral argument, Christakis contended that even if he had agreed to pay the bills for the operating expenses of the offices, he did not breach that obligation because the agreement did not say *when* he had to do so. But that argument is refuted by (a) the plain terms of the agreement, which impose an obligation "to provide" the Billerica office free and clear of such expenses; and (b) a common sense reading of it: it would hardly be a meaningful promise if

compliance could be accomplished whenever Christakis felt like it. At the very least, a delay of six weeks (the time that elapsed between execution of the agreement and Badamo's letter demanding performance) was plainly unreasonable.

## CONCLUSION

Franchise's motion for summary judgment is granted in full. The case is dismissed as against Franchise Capital Company, Paul Badamo, and John Lanciotti.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
      July 19, 2007